UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MARIO A. SABATES,

        Plaintiff,

v.                                                   CASE NO:  8:04-cv-824-T-17MSS

HOWARD R. CURD, HOWARD F. CURD,
EILEEN S. CURD, JESUP & LAMONT
SECURITIES CORPORATION, and
KC MAY SECURITIES CORPORATION,

        Defendants.
_____

FELICIANO S. SABATES and
CAROLYN P. SABATES,

        Plaintiffs,

v.                                                   CASE NO:  8:04-cv-825-T26MSS

HOWARD R. CURD, HOWARD F. CURD,
EILEEN S. CURD, JESUP & LAMONT
SECURITIES CORPORATION, and
KC MAY SECURITIES CORPORATION

        Defendants.
_____/

**O R D E R**

        This cause comes before the Court on Defendant KC May Securities Corporation's Motion to Compel Arbitration or Stay Proceedings (dkt. 50) and Plaintiffs' Memorandum in Opposition thereto (dkt. 55).

        Defendant KC May Securities Corporation ("KC May") seeks to compel arbitration of

Plaintiffs' claims in this action, pursuant to the pre-dispute arbitration clause found at paragraph 21 of the Customer Agreement ("the Agreement") between Plaintiffs and Bear, Stearns Securities Corporation ("Bear, Stearns"). Bear, Stearns is the clearing broker that actually executed Plaintiffs' securities trades for the introducing broker, KC May. (dkt. 48, ex. A.) The clause states, in pertinent part, that:

> You agree, and by maintaining an account for your Bear, Stearns agrees, that controversies arising between you and Bear, Stearns, its control persons, predecessors, subsidiaries and affiliates and all respective successors, assigns and employees, whether arising prior to, on or subsequent to the date hereof, shall be determined by arbitration. Any arbitration under this agreement shall be held at the facilities and before an arbitration panel appointed by the New York Stock Exchange, Inc., the American Stock Exchange, Inc., or the National Association of Securities Dealers, Inc. (**and only before such exchanges or association**).

(Id. at ¶ 21 (emphasis added).)

Plaintiffs initiated arbitrations against Defendants Howard F. Curd, Eileen Curd, KC May, and Jesup & Lamont Securities Corporation before the National Association of Securities Dealers ("NASD"). (Id. at ex. B.) It is undisputed that Plaintiffs had no choice in making this election because their claims against KC May did not meet the jurisdictional requirements of the New York Stock Exchange ("NYSE") or the American Stock Exchange ("AMEX") and thus were not eligible for arbitration before those forums. However, the NASD subsequently informed Plaintiffs, by letter dated December 9, 2004, that because KC May's membership had been cancelled: (1) Plaintiffs "may, but are not required to, arbitrate their claims in the NASD Dispute Resolution forum, even if [they] previously signed a pre-dispute arbitration agreement with KC May to arbitrate the claims here"; (2) that, pursuant to Rule 10301(a) of the NASD Code of Arbitration Procedure, KC May is not entitled to enforce the Agreement against Plaintiffs, unless Plaintiffs agree in writing to do so after the claim has arisen; (3) that arbitration

2

awards against terminated members "have a much higher incidence of non-payment than those against active members, and that the NASD has only limited disciplinary authority over inactive member firms that fail to satisfy arbitration awards"; and (4) Plaintiffs "may be able to bring this claim in court" if they have "not agreed to arbitrate the claim in another forum." (Id.) Plaintiffs did not consent to arbitrate their claims against KC May along with those against Howard F. Curd and Eileen Curd, but instead, moved to reinstate their claims against KC May before this Court. On January 4, 2005, the Court granted Plaintiffs' motion and authorized KC May to file the instant motion to compel. (dkt. 49.)

      KC May seeks to compel arbitration on the basis that the failure of a chosen arbitration forum does not invalidate the arbitration clause of the Agreement. It also urges that the NASD is still available to administer the arbitration with Plaintiffs' consent and that Plaintiffs must consent in light of the valid Agreement. Further, KC May argues that while Plaintiffs should not be permitted to refuse arbitration before the NASD, if they do in fact refuse, they should be compelled to arbitrate elsewhere. KC May argues that it has the right to arbitrate before another forum such as the American Arbitration Association, citing Brown v. ITT Consumer Fin. Corp., 211 F.3d 1217 (11th Cir. 2000), for its holding that if a designated arbitration forum is unavailable, the court shall compel arbitration in a substitute forum unless there is evidence that the choice of forum was "an integral part of the agreement to arbitrate." 211 F.3d at 1222. The arbitration agreement, in Brown, contained a clause that any dispute between the parties "shall be resolved by binding arbitration under the Code of Procedure of the National Arbitration Forum." Id. The National Arbitration Forum dissolved before the parties' dispute arose. Id. Because there was no evidence that the chosen forum was "integral" to the parties' agreement,

3

the Eleventh Circuit held that plaintiff was not released from its obligation to arbitrate.  Id.

KC May argues that the Brown holding is controlling here because of the similar unavailability of the chosen arbitration forum and the fact that the Agreement contains an arbitration clause similar to the one discussed in Brown, which provides that "any arbitration under this Agreement shall be held at the facilities and before an arbitration panel appointed by the New York Stock Exchange, Inc., the American Stock Exchange, Inc., or the National Association of Securities Dealers, Inc.."  KC May maintains that the fact that this clause identifies three options for the arbitration forum, the NASD, NYSE, or AMEX precludes a finding that the NASD was "integral" to the parties' decision to arbitrate.  It also contends that even though the clause provides that the arbitration "shall" be held before one of these three forums, that does not mean that the arbitration may "only" be held before those forums and that arbitration should be compelled.

However, KC May chooses to overlook a highly relevant provision of the instant arbitration clause which was not a part of the arbitration agreement in Brown.  Specifically, in the instant arbitration clause, the language "[a]ny arbitration under this Agreement shall be held at the facilities and before an arbitration panel appointed by the New York Stock Exchange, Inc., the American Stock Exchange, Inc., or the National Association of Securities Dealers, Inc." is immediately followed by the provision "and only before such exchanges or association."  The Court finds that this exclusive provision is evidence that the choice of forums was indeed integral to the parties' Agreement.   It is well established that arbitration is a creature of contract and neither party can be compelled to arbitrate when he has not agreed to do so.  Scott v. Prudential Securities, Inc., 141 F.3d 1007, 1011 (11th Cir. 1998) (citation omitted).  "A forum

selection clause in an arbitration agreement, just like any other contract provision, is entitled to complete enforcement absent evidence that the contract was procured through fraud or excessive economic power. Roney & Co. v. Goren, 875 F.2d 1218 (6th Cir. 1989). In light of the statement in the instant Agreement that arbitration shall occur "only before" the NYSE, the AMEX, or the NASD, it is clear to this Court that the parties specifically did not agree to submit disputes to arbitration before any other forum and should not be compelled to do so now. See Luckie v. Smith Barney, Harris Upham & Co., 999 F.2d 509, 513-14 (11th Cir. 1993); see also In re Salamon Inc. Shareholders' Derivative Litigation, 68 F.3d 554, 559 (2d Cir. 1995) ("Because the parties had contractually agreed that only the NYSE could arbitrate any disputes between them, [the district judge] properly declined to appoint substitute arbitrators and compel arbitration in another forum").

As previously stated, it is undisputed that the NYSE and AMEX forums are not available for arbitration of Plaintiffs' claims. Therefore, the language of the Agreement makes it clear that the only other possible arbitration forum is the NASD. Pursuant to NASD Rule 10301(a) the NASD forum is unavailable due to the expiration of KC May's membership unless Plaintiffs consent to arbitrate before it. Plaintiffs have opted to litigate their claims in this Court instead. In light of these facts, the Court finds that the decision in Elston v. Toma, 2004 WL 1048132 (D. Or. Apr. 15, 2004), while certainly not binding on this Court, is well-reasoned, persuasive, and should be followed.

Elston involved an arbitration agreement wherein plaintiff agreed to arbitrate all of its disputes with United Pacific Securities and to be bound by that agreement. Elston, 2004 WL 1048132, at *8-*9. As in the instant case, the agreement was premised on the broker's, United

5

Pacific, membership in the NASD and that membership had ultimately expired. Also, as in the case at bar, the NASD informed the plaintiff that: (1) he "may, but is not required to, arbitrate this claim in the NASD Dispute Resolution forum, even if [he] previously signed a pre-dispute arbitration agreement with United Pacific Securities to arbitrate the claim here"; (2) that United Pacific was not entitled to enforce the Arbitration Clause against plaintiff; and (3) that arbitration awards against terminated members "have a much higher incidence of non-payment than those against active members, and that the NASD has only limited disciplinary authority over inactive member firms that fail to satisfy arbitration awards." Id. at *9. The plaintiff gave written notice to the NASD that he no longer wished to proceed in the NASD arbitration forum.

The district court concluded that the plaintiff was not required to arbitrate his dispute. The court examined the legislative history of Rule 103101(a) and found that it is a substantive rule designed to protect customers. Id. at *11. The broker argued that enforcing the Rule to prevent arbitration would deprive it of the benefits of its contract with the plaintiff and thereby violated the Federal Arbitration Act. Id. The court rejected this argument, concluding that "[w]hen Rule 10301(a) became effective in June 2001, the broker had no reasonable expectation that it could enforce the arbitration agreement." Id. As Plaintiffs correctly argue, this holding applies with even more force here than in Elston because KC May continued to be a member of the NASD before and after the effective date of Rule 10301(a), whereas the Elston broker's NASD membership terminated more than two years before Rule 10301(a) became effective in June of 2001. Id. at *10-*11.

The Elston Court went on to distinguish the Brown decision by holding that it did not support United Pacific's position in light of the fact that "Rule 10301(a) was promulgated

6

specifically to provide customers ... with the opportunity to opt out of arbitration agreements entered into with subsequently terminated NASD members" and "Rule 10301(a) reflects the fact that the NASD viewed the NASD forum as an integral part of the arbitration agreement rather than as a mere 'ancillary logistical concern.'" Id. at *11.  The Court agrees with the Elston court's analysis.

KC May attempts to distinguish the facts in Elston from those in the instant case by arguing that the agreement in Elston provided only for arbitration before the NASD and no other forums.  This distinction is meaningless inasmuch as the Agreement's arbitration clause specifically states that arbitration shall occur "only before" the NYSE, the AMEX, or the NASD and Plaintiffs were never eligible to arbitrate their claims against KC May in the NYSE or AMEX forums due to jurisdiction requirements.  KC May also attempts to distinguish the facts in Elston from those in the instant case by arguing that the particular rules of any one organization [NASD, NYSE, or AMEX] are not entitled to weight in determining the parties' intent with respect to arbitration.  The arbitration agreement in Elston included a requirement that NASD rules at the time of arbitration would apply.  However, the asserted distinction is inconsequential.  KC May availed itself of membership in the NASD, Plaintiffs initially elected the NASD as the forum for arbitration, KC May allowed its membership in the NASD to be canceled, and now KC May, as one of its alternative remedies in the instant Motion, seeks an order compelling Plaintiffs to arbitrate before the NASD.  KC May's argument that the NASD Code of Arbitration Procedure is not to be afforded any weight is disingenuous at best.  See Washington Square Sec., Inc. v. Aune, 385 F.3d 432, 435 (11th Cir. 2004) (holding that "[t]he NASD Code constitutes an 'agreement in writing' under the [FAA}" that binds NASD members

to arbitrate under NASD Rules).  Based upon all of the foregoing, the Motion to Compel is due to be denied.

As an alternative motion, KC May seeks a stay of litigation while the NASD arbitration proceedings against Howard F. Curd and Eileen Curd are pending.  The Motion to Stay is also due to be denied in light of the overwhelming weight of authority holding that parallel federal litigation and arbitration of related claims should proceed simultaneously.  See Sierra Rutile Ltd. v. Katz, 937 F.2d 743, 740-51 (2d Cir. 1991); Chang v. Lin, 824 F.2d 219, 222 (2d Cir. 1987); Girard v. Drexel Burnham Lambert, Inc., 805 F.2d 607, 611 (5th Cir. 1986); Bustamante v. Rotan Mosle, Inc., 802 F.2d 815, 817 (5th Cir. 1986); American Shipping Line, Inc. v. Massan Shipping Indus., Inc., 885 F. Supp. 499, 501-03 (S.D.N.Y. 1995).

**ACCORDINGLY**, it is **ORDERED AND ADJUDGED**:

Defendant KC May Securities Corporation's Motion to Compel Arbitration or Stay Proceedings (dkt. 50) is denied.

**DONE AND ORDERED** at Tampa, Florida, on February 11, 2005.

s/
**RICHARD A. LAZZARA**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record