UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MARIO A. SABATES,

    Plaintiff,

v.                                                                        Civil Action No. 8:04-CV-824-T17MSS
                                                                   Lazzara, J.

HOWARD R. CURD, HOWARD F. CURD,
EILEEN S. CURD, JESUP & LAMONT
SECURITIES CORPORATION, and
KC MAY SECURITIES CORPORATION,

    Defendants.
_____

FELICIANO S. SABATES and
CAROLYN P. SABATES,

    Plaintiffs,

v.                                                                        Civil Action No. 8:04-CV-825-T26MSS
                                                                  Lazzara, J.

HOWARD R. CURD, HOWARD F. CURD,
EILEEN S. CURD, JESUP & LAMONT
SECURITIES CORPORATION, and
KC MAY SECURITIES CORPORATION,

    Defendants.
_____/

## PLAINTIFFS' MOTION FOR CLARIFICATION

Pursuant to this Court's Order of March 1, 2005 (dkt. 64; the "March 1 Order") and Endorsed Order of March 10, 2005 (dkt. 73), counsel for all parties conducted a telephonic Case Management Conference on Friday, March 18, 2005 to discuss preparation of the Case Management Report, which is currently due this Friday, April 1. During the Case Management Conference, counsel for Defendants advanced an interpretation of the March 1 Order that, in

Plaintiffs' view, was entirely untenable because it would eliminate a substantial part of Plaintiffs' case, notwithstanding the fact that the March 1 Order denied Defendant Howard R. Curd's motion to dismiss as to each and every substantive count asserted in Plaintiffs' Amended Complaints. Accordingly, Plaintiffs' counsel expressed disagreement with this assertion in the strongest possible terms. Defendants' counsel did not dispute the matter further, and Plaintiffs' counsel believed the issue had been resolved. On March 28, Plaintiffs' counsel received an e-mail from Defendants' counsel, which persisted in asserting the same non-meritorious objection.

If not resolved, Defendants' objection will delay or obstruct: (a) filing and implementation of the Case Management Report; (b) the exchange of Rule 26 Initial Disclosures (which Plaintiffs had thought would take place on April 8, some three weeks after the Case Management Conference); and (c) the taking of all discovery in this case. As in most cases, delay here will work to the advantage of Defendants. Accordingly, Plaintiffs hereby respectfully request that this Court issue a clarification of the March 1 Order.

Pursuant to Local Rule 3.01(g), Plaintiffs' counsel certify that they have conferred in good faith with Defendants' counsel, and have been unable to reach agreement on the resolution of this motion. The grounds for this motion are set forth in the incorporated memorandum of law.

## MEMORANDUM OF LAW

The March 1 Order states, in pertinent part:

> Defendant Howard R. Curd's motion to dismiss the amended complaints (dkt. 51) is denied in all respects but one. The motion is granted to the extent that the approximately 150 paragraphs of the <u>Bellocco</u> class action complaint adopted by reference at paragraph 25 of the amended complaints (dkts. 39 & 40) are dismissed.

(*Id.* at 5.)

In the e-mail sent on March 28 (copy attached as Exhibit A), Defendants assert that the act of dismissing the paragraphs incorporated by reference from the *Bellocco* class action from the present Amended Complaints had the practical effect of dismissing all of Plaintiffs' claims relating to the fraudulent misstatements and omissions Howard R. Curd, as Chairman and CEO of Uniroyal Technology Corporation ("Uniroyal"), made and caused others to make to Plaintiffs and the investing public regarding the business and growth prospects of Uniroyal's newly formed Optoelectronics and Semiconductor Division, which supposedly produced High Brightness Light Emitting Diodes (HB-LEDs), even though it never had a commercially saleable product. (*E.g.*, Amended Complaint for Mario A. Sabates (dkt. 39) at ¶¶ 19, 21, 22, 51.[1])

With all due respect to opposing counsel, Plaintiffs believe that this argument is made up out of thin air. Paragraph 25 of the Amended Complaints is only one paragraph in an entire section captioned "Howard R. Curd Purports to Convert Uniroyal into a High Technology Company, and Makes Materially False and Misleading Statements in Order to Inflate the Value of Uniroyal Stock." (*Id.* at 5.) Indeed, the Amended Complaints contain the following specific allegations about Howard R. Curd's fraudulent misrepresentations and omissions:

> 21.　From at least February 8, 2000 through May 13, 2002, Howard R. Curd made and caused others to make, materially false and misleading statements about Uniroyal, in particular about the growth and business prospects of the Division. For example, Howard R. Curd, in combination with other senior executives of Uniroyal whom he had hired and supervised, misrepresented to the market that: (a) UOL was capable of, and was in fact, mass producing commercially saleable HB-LEDs and other products; (b) Sterling was a valuable

---

[1] As alleged in the Amended Complaints, the HB-LED business represented Howard R. Curd's attempt to transform Uniroyal into a high technology company. (*Id.* at ¶ 19.) The primary vehicle for Uniroyal's attempted transformation was a joint venture with Emcore Corporation to produce HB-LEDs though a new company, Uniroyal Optoelectronics, LLC ("UOL"). (*Id.*) In addition, Uniroyal acquired Sterling Semiconductor, Inc. ("Sterling"), a producer of single-crystal silicon carbide substrates. These businesses made up the majority of Uniroyal's newly-formed Optoelectronics and Semiconductor Division (the "Division"). (*Id.*)

>asset; and (c) Uniroyal had the resources to facilitate Sterling's expansion into the production of devices based on the latter's silicon compound semiconductors.
>
>22. These statements were false and Howard R. Curd made or caused them to be made with the intent to inflate the market price for Uniroyal stock in furtherance of the Curd Family conspiracy. In truth, the Division and all of Uniroyal's high technology prospects faced insurmountable difficulties. For example, UOL was experiencing constant manufacturing difficulties and failed ever to mass-produce any commercially saleable HB-LEDs or other product. Similarly, Sterling, which was presented by Howard R. Curd as Uniroyal's means to enter the lucrative world of silicon carbide devices, was nothing more than a research and development company that was teetering on the edge of bankruptcy when Uniroyal purchased it. As with UOL, Sterling similarly failed to produce any of the products Howard R. Curd and others had conditioned the market to believe that Uniroyal was capable of developing. Furthermore, Uniroyal had neither the technical expertise nor the capital to support Sterling's development of silicon carbide-based devices.

(*Id.* at ¶¶ 21-22.) Moreover, Plaintiffs' allegations relating to the fraudulent misrepresentations and omissions Howard R. Curd made or caused others to make to the investing public are referenced repeatedly throughout the Amended Complaints, including Plaintiffs' civil conspiracy claim (Count I), which forms the core of this entire case. (*Id.* at ¶¶ 59 ("With a malicious motive, Defendants Howard R. Curd, Howard F. Curd, Eileen Curd and Jesup & Lamont agreed to and entered into a civil conspiracy to do an unlawful act or a lawful act through unlawful means, including, but not limited to their manipulation of Uniroyal stock and <u>the material misrepresentations and omissions about Uniroyal stock they made with the intent to defraud **the investing public** and the Sabates</u>"; emphasis added.), 60 ("One or more Defendants committed one or more overt acts in pursuance of this conspiracy, including, but not limited to the wash trades executed by Howard F. Curd in securities accounts he controlled and beneficially owned at Jesup & Lamont, the fraudulent Reports issued by Jesup & Lamont touting Uniroyal stock, and <u>the material misstatements and omissions about Uniroyal that Howard R. Curd</u> and Eileen Curd <u>made or caused to be made to **the investing public** and Plaintiff</u>"; *see also, e.g., id.* at

¶¶ 51, 63, 67, 73, 77, 83, 84.) Defendants' argument boils down to the assertion that, in addition to striking the part of paragraph 25 that incorporated allegations from the *Bellocco* complaint, this Court also intended to strike another 10 to 15 paragraphs of the Amended Complaints that reference the fraudulent misrepresentations and omissions Howard R. Curd made or caused others to make about Uniroyal's HB-LED business to the investing public. Plaintiffs can find no support for this assertion in the March 1 Order.

In Plaintiffs' view, the only significance of paragraph 25 and the allegations incorporated from the *Bellocco* complaint was for purposes of Federal Rule of Civil Procedure 9(b), which requires fraud to be plead with specificity. Yet even apart from the stricken allegations from the *Bellocco* complaint, the March 1 Order held that "Plaintiffs [had] plead[ed] fraud with enough particularity to comply with Rule 9(b)." (*Id.* at 4.) Defendants' argument is entirely inconsistent with those parts of the March 1 Order that uphold all of Plaintiffs' substantive claims in all respects. (*Id.* at 4-5.)

Defendants reveal their true agenda in their alternative demand that discovery in this case must be "consolidated" with discovery in the *Bellocco* class action. This argument is truly disingenuous – when Defendants argue for "consolidation," they actually mean delay. Almost three years after its filing in June 2002, no merits discovery has occurred in the *Bellocco* case. Unlike *Bellocco*, this case is not a class action driven by contingency fees. Plaintiffs filed this case in part due to their dissatisfaction with the pace of *Bellocco*, in addition to the fact that they had stronger and additional claims against Howard R. Curd and parties related by blood, marriage and business ties to Howard R. Curd. This Court has denied all of Defendants' motions to dismiss and ordered the parties to file a Case Management Report. Simply put, this case is ripe for discovery now, and Plaintiffs believed that discovery would promptly begin in the next

few weeks until Defendants interposed their latest attempt to forestall Plaintiffs' pursuit of claims this Court has already determined to be legally valid.

Plaintiffs have no objection to coordinating discovery with *Bellocco* or any other case, but they will not agree to have their case delayed by matters over which they have no control. If possible, discovery in *Bellocco* should be coordinated with discovery in this case, not vice versa – but only if possible. From Plaintiffs' review of the *Bellocco* docket, it appears that merits discovery in that case is not yet ripe, and may not become ripe for six months or even a year or longer. No one – least of all Defendants – can predict with any certainty when merits discovery in *Bellocco* might begin. Among other possibilities, should Judge Whittemore uphold Magistrate McCoun's report and recommendation denying in substantial part the *Bellocco* defendants' motion to dismiss, the *Bellocco* case might then settle, and all the delay in this case will have been to no proper purpose. Apart from their transparent and unseemly desire for delay, Defendants have failed to offer any legal basis for halting discovery in this case pending discovery in another case, particularly when no merits discovery is currently scheduled or may ever occur in the other case.

This Court should consider Defendants latest request for delay in the context of Defendants' previous improper and frivolous efforts to delay and forestall Plaintiffs' claims, including the following:

- Refusing to consent to the reinstatement of Plaintiffs' claims against KC May (dkt. 48), even after the NASD had ruled that KC May could not compel arbitration against Plaintiffs under NASD Rule 10301(a).

- Filing a non-meritorious motion to compel arbitration (dkt. 50) that sought, as alternative relief, a stay of this case pending the NASD arbitration, without any mention or discussion of the numerous cases holding that arbitration and litigation should proceed simultaneously. (*See* Order of Denying Motion to Compel Arbitration or Stay Proceedings (dkt. 58) at 8.)

- Filing 245 pages of extraneous and improper materials in support Howard R. Curd's motion to dismiss (dkt. 51) in blatant disregard of this Court's Order of July 12, 2004 (dkt. 30) and controlling Eleventh Circuit law.

- After this Court struck those extraneous and improper materials, filing a frivolous motion for reconsideration (dkt. 67) based entirely on arguments that Defendant could have made earlier.

- Filing a motion to dismiss on behalf of KC May (dkt. 66) that attempted in substantial part to reargue issues that this Court had already decided adversely to Defendants in the March 1 Order.

## CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that this Court promptly clarify its March 1 Order, and permit Plaintiffs to proceed with discovery relating to all of their substantive claims and allegations in the Amended Complaints, including their allegations that Defendant Howard R. Curd made and caused others to make fraudulent misstatements and omissions to the investing public regarding Uniroyal, the Division and Uniroyal's HB-LED business.

Respectfully submitted,

By: /s/ Robert R. Hearn
Robert R. Hearn
Bar No. 0067687
Joshua R. Heller
Bar No. 0502901
ZUCKERMAN SPAEDER LLP
101 E. Kennedy Blvd., Suite 1200
Tampa, Florida 33602
813-221-1010
813-223-7961 (FAX)

and

        Donald A. Loft, Trial Counsel
        Georgia Bar No. 455706
        Ross A. Albert
        Georgia Bar No. 007749
        MORRIS, MANNING & MARTIN, LLP
        1600 Atlanta Financial Center
        3343 Peachtree Road, N.E.
        Atlanta, GA 30326
        (404) 233-7000
        (404) 365-9532

        Attorneys for Plaintiffs FELICIANO S.
        SABATES, CAROLYN P. SABATES AND
        MARIO A. SABATES

## CERTIFICATE OF SERVICE

    I hereby certify that on March 29, 2005, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following: Tucker H. Byrd, Esq., Greenberg Traurig LLP, 450 S. Orange Ave., Suite 650, Orlando, Florida 32801; Ronald D. Lefton, Esq. Greenberg Traurig, LLP, 885 3rd Avenue, 21st Floor, New York, NY 10022; and Robert R. Hearn, Esq., Joshua R. Heller, Esq., Zuckerman Spaeder LLP, 101 E. Kennedy Blvd., Suite 1200, Tampa, Florida 33602. Non-CM/ECF filers: Donald A. Loft, Esq., Morris Manning & Martin, 3343 Peachtree Rd NE – Ste 1600 Atlanta GA 30326 will receive a copy via First Class U.S. Mail.

                                      /s/
                                      Attorney

**Hearn, Robert R.**

**From:** DStone@gtlaw.com
**Sent:** Monday, March 28, 2005 3:47 PM
**To:** ralbert@mmmlaw.com
**Cc:** LeftonR@gtlaw.com
**Subject:** RE: Sabates v. Curd - Case Management Report

Ross,

I have reviewed your proposed case management report, received at 8:20 p.m. March 24, almost a full week after we began our discussions, and discussed it with Ron. There are a number of problems with your proposal, the greatest of which is the scope of the issues that remain in the case.

You seem to be of the opinion that Judge Lazzara's order striking the Bellocco complaint was a meaningless act. That position has no merit. We do not believe that Judge Lazzara would strike the Bellocco allegations if he did not intend the act to have substantive effect. Those allegations, including the alleged misstatements contained therein, are not at issue in this case. The only allegedly fraudulent statement at issue with respect to Howard R. Curd is the alleged June 2001 statement regarding a potential acquisition. There are no other statements attributed to Curd in the Amended Complaints. In addition, the five omissions alleged, among other places, at paragraph 51 of the Amended Complaint may also be relevant. I note that, however, that the Amended Complaint does not attempt to relate any of the alleged omissions to the June 2001 statement. The discovery plan you proposed, therefore, is hopelessly overbroad in that it contemplates discovery on irrelevant issues not likely to lead to the discovery of admissible evidence.

Further, the last of the alleged omissions, that Uniroyal alleged never had a commercially saleable HB-LED product, is entirely duplicative of one of the Bellocco issues. Discovery on that issue should be coordinated with discovery in Bellocco, should that case proceed.

If you agree with our assessment of the issues remaining in the case, including that any discovery of the overlapping Bellocco issue should be coordinated with discovery in the putative class action, we may be able to reach an agreement on the case management report. If not, I think we will need to file separate proposed case management reports and seek direction from the Court. In the event the Court does rule that the Bellocco matters remain in this action, we will seek consolidation of discovery in this case with discovery in Bellocco, should that case go forward. Our request for consolidation would be based, in part, on your admission that uncoordinated discovery on these issues would result in unnecessary duplication of effort.

Please contact me at your earliest convenience.


EXHIBIT A

-----Original Message-----
From: Ross Albert [mailto:ralbert@mmmlaw.com]
Sent: Thursday, March 24, 2005 8:20 PM
To: Stone, David (Assoc-NY-LT)

1

Subject: Sabates v. Curd - Case Management Report

David -

Attached please find a draft of the Case Management Report, which we have to file on or before next Friday, April 1.

This draft reflects everything we discussed during the Case Management Conference we had last Friday, March 18 except: (1) I reduced the number of depositions requested from 25 to 20; (2) I changed the date for Rule 26(a) initial disclosures from April 15 to April 8, and, as a result, I also changed the date for the issuance of document requests and deposition notices from April 22 to April 15.

I made the first change because I am not sure whether Judge Lazzara would grant either side 25 deposition (I am not sure he will grant 20). I made the second change because I will be out of town from April 20 through April 24. In that connection, I note the default provision set forth in Fed. R. Civ. P. 26(a) is that initial disclosures are to be made at or within 14 days after the Rule 26(f) conference, which occurred in this case on Friday, March 18.

Please contact me with your questions and edits.

Thanks so much,

Ross A. Albert
Morris, Manning & Martin, L.L.P.
1600 Atlanta Financial Center
3343 Peachtree Road, N.E.
Atlanta, GA 30326-1044
Tel: 404-504-7768
Fax: 404-365-9532
Email: raa@mmmlaw.com

For information on Morris, Manning & Martin, LLP, please visit our Web site at http://www.mmmlaw.com.
This e-mail message and its attachments are for the sole use of the intended recipients. They may contain confidential information, legally privileged information or other information subject to legal restrictions. If you are not the intended recipient of this message, please do not read, copy, use or disclose this message or its attachments, notify the sender by replying to this message and delete or destroy all copies of this message and attachments in all media. Thank you.
------------------------------------------------------------

The information contained in this transmission may contain privileged and confidential information. It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. To reply to our email administrator directly, please send an email to postmaster@gtlaw.com.

2